UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GENERAL ELECTRIC CAPITAL )
BUSINESS ASSET FUNDING )
CORPORATION, a Delaware corporation, )
)
Plaintiff, )
)
v. ) CIVIL ACTION NO. CV-99-B-2337-S
)
C.A.C. LEASING, INC., an Alabama )
corporation; BLACK CREEK LAND & )
MINERAL, INC., an Alabama corporation; )
LAGUNA RESOURCES, INC., an Alabama )
corporation; JEFFERSON SCREENING, )
INC., an Alabama corporation; WALKER )
LAND & MINERAL, INC., an Alabama )
corporation; and DERRELL CHAMBLEE, )
an individual, )
)
Defendants. )

## MEMORANDUM OPINION

Currently before the court is the Motion for Summary Judgment filed by plaintiff General Electric Capital Business Asset Funding Corporation ("GE Capital" or "plaintiff") on its claims for breach of a lease agreement, recovery of certain personal property that was the subject of the lease agreement, and breach of corporate and personal guarantees. C.A.C. Leasing, Inc., Black Creek Land & Mineral, Inc., Laguna Resources, Inc., Jefferson Screening, Inc., Walker Land & Mineral, Inc., and Derrell Chamblee (hereinafter collectively referred to as "defendants") have not opposed GE Capital's Motion for Summary Judgment. Upon consideration of the record, plaintiff's submission, and the relevant law, the court is of the opinion that plaintiff's Motion is due to be granted and final judgment is due to be entered in favor of plaintiff and against defendants, separately and severally, in the amount of $2,919,275.39, for which execution may issue.

## I. FACTUAL SUMMARY

On or about October 18, 1997, Metlife Capital, Limited Partnership by Metlife Capital Corporation ("Metlife"), as lessor, entered into a Master Lease Agreement (the "Lease") with C.A.C. Leasing, Inc. ("C.A.C."), as lessee. (*See* PX[1] 1 at ¶ 4; PX 2 at ¶ 10, Ex. 1; PX 5 at ¶ 3.) The Lease incorporates Equipment Leases Nos. One and Two dated December 18, 1997, and March 12, 1998, respectively, along with their associated Lease Closing Schedules designated Leases Nos. 42-001 and 42-002, dated October 18, 1997, and March 25, 1998, respectively. (*See* PX 2 at Ex. 1.) The parties amended the Lease on or about March 12, 1998, and made certain corrections and adjustments to Leases Nos. 42-001 and 42-002 in December 1997, and July 1998. (PX 2 at Ex. 1.) Both Leases, Nos. 42-001 and 42-002, were revised on April 20, 1999. (*See* PX 2 at Ex. 1.)

Pursuant to the terms of the Lease and Amendment, C.A.C. agreed to lease certain equipment (the "Equipment") from Metlife, and, in exchange for use of the Equipment, C.A.C. agreed to pay rent to Metlife (including its successors and assigns). (PX 2 at Ex. 1, ¶¶ 1, 23.) By action of Metlife's Board of Directors, Metlife amended its Certificate of Incorporation to change its name to General Electric Capital Business Asset Funding Corporation, plaintiff herein. (*See* PX 1 at ¶ 5 and Ex. 1.)

The Lease provides that if any installment of rent or other sum owed under the Lease is not paid when due and remains unpaid for ten days, C.A.C. must pay Metlife a late charge equal to five percent of the delinquent amount, but in no event at a rate greater than that provided by applicable law. (PX 2 at Ex. 1, ¶ 7.) The Lease states that in the event of a default, Metlife has a right to recover from C.A.C. any and all amounts due under the terms of the Lease or which have accrued to the date of such termination. (*Id.* at Ex. 1, ¶ 18.) The Lease further provides that MetLife has a right to recover forthwith from C.A.C. its damages for loss of a bargain and not as a penalty, an amount equal to the higher of the Fair Market Value or the Stipulated Loss Value of the Equipment as of the rent payment date on or next preceding the date of default, less:

---

[1] The documents attached to plaintiff's Motion for Summary Judgment will be referred to throughout this Memorandum Opinion as "PX" followed by the corresponding tab number.

(1) the amount Metlife receives from the sale of the Equipment, after deduction of all estimated expenses of such sale, or (2) at Metlife's election, the present value of the non-cancelable regularly scheduled rentals receivable from a subsequent lease of all or part of the Equipment entered into by Metlife (discounted at the Default Rate), and taking into account only the rentals receivable from the commencement date of such subsequent lease until the end of the Lease term. (*Id.*) The Lease also provides that C.A.C. shall be liable to Metlife for all costs and expenses incurred by Metlife due to C.A.C.'s breach or default. (*Id.*) Further, pursuant to the Lease, C.A.C. is liable for interest on all amounts from and after the due date at the Lease Default Rate, or the legal limit, whichever is smaller. (*Id.*) The Lease provides that C.A.C. is liable for all legal fees and expenses with respect to or incurred by reason of any breach or default, including legal fees and expenses for advice and legal services in any actions or proceedings which Metlife may commence or in which Metlife may appear or participate to exercise or enforce any rights or remedies or to protect or preserve any rights or interests, and in all reviews of and appeals from any such actions or proceedings. (*Id.*)

On or about October 18, 1997, Black Creek Land and Mineral, Inc. ("Black Creek"), for good and valuable consideration, executed an unconditional Corporate Guaranty And Certified Copy Of Board Resolution Authorizing Guaranty ("Guaranty No. 1"), pursuant to which Black Creek unconditionally guaranteed to pay to or perform for Metlife (including its successors and assigns) any and all obligations and liabilities whatsoever of C.A.C. to Metlife, which C.A.C. then had or thereafter incurred. (*See* PX 1 at ¶ 6; PX 2 at Ex. 2.) Pursuant to the terms of Guaranty No. 1, Black Creek agreed to pay reasonable attorney's fees and other costs and expenses incurred by Metlife in the enforcement of Guaranty No. 1. (PX 2 at Ex. 2.)

On or about March 12, 1998, Black Creek, for good and valuable consideration, again executed an unconditional Corporate Guaranty And Certified Copy Of Board Resolution Authorizing Guaranty ("Guaranty No. 2"), pursuant to which Black Creek unconditionally guaranteed to pay to or perform for Metlife (including its successors and assigns) any and all obligations and liabilities whatsoever of C.A.C. to Metlife, which C.A.C. then had or thereafter incurred. (*See* PX 1 at ¶ 7; PX 2 at Ex. 3.) Pursuant to the terms of Guaranty No. 2, Black Creek

3

agreed to pay reasonable attorney's fees and other costs and expenses incurred by Metlife in the enforcement of Guaranty No. 2. (PX 2 at Ex. 3.)

On or about April 23, 1999, Walker Land & Mineral, Inc. ("Walker"), for good and valuable consideration, executed an unconditional Corporate Guaranty And Certified Copy Of Board Resolution Authorizing Guaranty ("Guaranty No. 3"), pursuant to which Walker unconditionally guaranteed to pay to or perform for GE Capital (including its successors or assigns) any and all obligations and liabilities whatsoever of C.A.C. to GE Capital, which C.A.C. then had or thereafter incurred. (*See* PX 1 at ¶ 8; PX 2 at Ex. 4.) Pursuant to the terms of Guaranty No. 3, Walker agreed to pay reasonable attorney's fees and other costs and expenses incurred by GE Capital in the enforcement of Guaranty No. 3. (PX 2 at Ex. 4.)

On or about October 18, 1997, Jefferson Screening, Inc. ("Jefferson"), for good and valuable consideration, executed an unconditional Corporate Guaranty And Certified Copy Of Board Resolution Authorizing Guaranty ("Guaranty No. 4"), pursuant to which Jefferson unconditionally guaranteed to pay to or perform for Metlife (including its successors and assigns) any and all obligations and liabilities whatsoever of C.A.C. to Metlife, which C.A.C. then had or thereafter incurred. (*See* PX 1 at ¶ 9; PX 2 at Ex. 5.) Pursuant to the terms of Guaranty No. 5, Jefferson agreed to pay reasonable attorney's fees and other costs and expenses incurred by Metlife in the enforcement of Guaranty No. 4. (PX 2 at Ex. 5.)

On or about March 12, 1998, Jefferson, for good and valuable consideration, again executed an unconditional Corporate Guaranty And Certified Copy Of Board Resolution Authorizing Guaranty ("Guaranty No. 5"), pursuant to which Jefferson unconditionally guaranteed to pay to or perform for Metlife (including its successors and assigns) any and all obligations and liabilities whatsoever of C.A.C. to Metlife, which C.A.C. then had or thereafter incurred. (*See* PX 1 at ¶ 10; PX 2 at Ex. 6.) Pursuant to the terms of Guaranty No. 5, Jefferson agreed to pay reasonable attorney's fees and other costs and expenses incurred by Metlife in the enforcement of Guaranty No. 5. (PX 2 at Ex. 6.)

On or about April 23, 1999, Laguna Resources, Inc. ("Laguna"), for good and valuable consideration, executed an unconditional Corporate Guaranty And Certified Copy Of Board

Resolution Authorizing Guaranty ("Guaranty No. 6"), pursuant to which Laguna unconditionally guaranteed to pay to or perform for GE Capital (including its successors and assigns) any and all obligations and liabilities whatsoever of C.A.C. to GE Capital, which C.A.C. then had or thereafter incurred. (*See* PX 1 at ¶ 11; PX 2 at Ex. 7.) Pursuant to the terms of Guaranty No. 6, Laguna agreed to pay reasonable attorney's fees and other costs and expenses incurred by GE Capital in the enforcement of Guaranty No. 6. (PX 2 at Ex. 7.)

On or about October 18, 1997, Derrell Chamblee ("Chamblee"), for good and valuable consideration, executed an unconditional Personal Guaranty ("Guaranty No. 7"), pursuant to which Chamblee unconditionally guaranteed to pay to or perform for Metlife (including its successors and assigns) any and all obligations and liabilities whatsoever of C.A.C. to Metlife, which C.A.C. then had or thereafter incurred. (*See* PX 1 at ¶ 12; PX 2 at Ex. 8.) Pursuant to the terms of Guaranty No. 7, Chamblee agreed to pay reasonable attorney's fees and other costs and expenses incurred by Metlife in the enforcement of Guaranty No. 7. (PX 2 at Ex. 8.)

C.A.C. failed to make payments to GE Capital as required, and, thus, defaulted under the terms of the Lease. (*See* PX 1 at ¶ 13; PX 3 at 1-2; PX 5 at ¶ 4.) By letter dated July 29, 1999, GE Capital provided notice of C.A.C.'s default and made demand upon Black Creek, Walker, Jefferson, Laguna, and Chamblee (collectively, the "Guarantors") to pay the entire amount due and owing under the Lease. (*See* PX 1 at ¶ 14 and Ex. 2.) The Guarantors refused to pay the entire amount due and owing under the Lease. (*Id.*; PX 2 at ¶ 19.)

## II. SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* Fed. R. Civ. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the

nonmoving party to go beyond the pleadings and by . . . affidavits or by the 'depositions, answers to interrogatories, and admission on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. PROCEDURAL HISTORY

On or about September 3, 1999, plaintiff filed this action against defendants. Eight payments owed by C.A.C. under the Lease are past due and unpaid. Defendants admit C.A.C. is in default and do not challenge plaintiff's allegations. The current Lease payoff quotation through September 8, 2000, is $2,919,275.39, and plaintiff is entitled to a judgment in this amount plus such other amounts as may be due and owing to plaintiff from C.A.C. under the Lease and from the Guarantors under their respective Guarantees. (*See* PX 1 at ¶ 15 and Ex. 3.)[2] However, plaintiff has waived its right to recover contractual interest and attorney's fees from defendants, so those amounts are not included in the calculation of the judgment.

---

[2] The cited evidence quotes a figure of $3,938,019.28. (*See* PX 1 at ¶ 15 and Ex. 3.) However, as noted below, the figure awarded in the judgment has been reduced pursuant to GE Capital's sale of some of the Equipment.

When plaintiff filed its Complaint, the Equipment was still in C.A.C.'s possession, and it was located at 345 Manual Hill Road, Cordova, Walker County, Alabama. (*See* PX 1 at ¶ 16.) Therefore, subsequent to the filing of its Complaint, plaintiff filed a Motion for Writ of Seizure and a proposed Order for Writ of Seizure, asking that the court allow the sheriff or other duly constituted officer to immediately seize the Equipment. (*See* PX 1 at ¶ 17.) Magistrate Judge Robert R. Armstrong, Jr., granted GE Capital's Motion for Writ of Seizure on January 31, 2000. (*See* PX 3 at 4.)

### III. CONCLUSION

It is undisputed that C.A.C. has defaulted under the Lease, thus triggering each Guarantor's obligation under their respective Guarantees. Although it was not required to do so under the Guarantees, GE Capital provided notice of C.A.C.'s default to each of the Guarantors, but the Guarantors failed to pay the sums due from C.A.C. to GE Capital. Accordingly, GE Capital is entitled as a matter of law to the remedies under the Guarantees against all Guarantors including, but not limited to, payment of all unpaid rentals and other amounts due and to become due under the Lease.

Pursuant to the terms of the Lease, GE Capital has immediate right, title, and interest in the Equipment, and GE Capital is entitled to immediate payment of all unpaid rentals and other amounts due and to become due under the Lease. (*See* PX 2 at Ex. 1 ¶¶ 14, 18; PX 3 at 2.) GE Capital arranged for the sale of some of the Equipment for $1,100,000.00, which has been included in the calculation of the judgment. Thus, judgment is due to be entered in favor of plaintiff and against defendants, separately and severally, in the amount of $2,919,275.39.

If GE Capital is able to sell any of the remaining Equipment after entry of the Memorandum Opinion and Order, GE Capital is ordered to immediately instruct the court of the same, whereby the court will amend the judgment against defendants by reducing the judgment in the amount GE Capital receives from the sale of any of the remaining Equipment, after

deduction of all estimated expenses of such sale. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 22nd day of November, 2000.

*[signature]*
**SHARON LOVELACE BLACKBURN**
United States District Judge